IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MARTIN K. EBY CONSTRUCTION COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  08-1250-WEB |
| ONE BEACON INSURANCE COMPANY, successor in interest to COMMERCIAL UNION INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| CONTINENTAL CASUALTY COMPANY, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD as successor by merger with Transcontinental Insurance Company, and COLUMBIA CASUALTY COMPANY, | ) ) ) ) ) ) ) | Case No.  08-2392-WEB |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ONE BEACON INSURANCE COMPANY as successor to COMMERCIAL UNION INSURANCE COMPANY; TRAVELERS CASUALTY & SURETY COMPANY as successor to AETNA CASUALTY & SURETY COMPANY; UNITED STATES FIDELITY & GUARANTY COMPANY; ST. PAUL FIRE & MARINE INSURANCE COMPANY; and MARTIN K. EBY CONSTRUCTION CO., INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

1

This matter is before the court on Defendant Kellogg, Brown & Root, LLC's (hereafter KBR) Motion for Partial Summary Judgment, (Doc. 69) and Plaintiff Martin K. Eby Construction Company's (hereafter Eby) Motion for Summary Judgment. (Doc. 93). KBR has filed a motion for oral arguments. (Doc. 102). Athena Assurance Company, St. Paul Fire and Marine Insurance company, Travelers Casualty and Surety Company, United Fidelity and Guarantee Company (hereafter Travelers) have joined in Eby's Motion for Summary Judgment (See Doc. 95).

I. Procedural History

Eby filed case 08-1250 alleging breach of insurance contract, arguing that OneBeacon breached its obligations under the insurance policy in failing to make payment to Eby and KBR in a lawsuit in the Southern District of Texas (hereafter underlying suit). Eby requests relief in the form of a judicial finding that OneBeacon provides primary liability coverage for claims asserted by Celanese, the plaintiff in the underlying suit.

Case 08-2392 is a construction contract case. The plaintiffs request declaratory judgment regarding whether certain insurance policies provide coverage to Eby in the underlying suit. The cases were consolidated. Travelers filed a cross-claim against Eby, requesting declaratory judgment for the purposes of determining the actual controversy between the parties and the rights and legal relations of insurance contracts issued to Eby; as well as a cross-claim against Eby for recoupment of defense costs in the underlying suit. OneBeacon filed a cross-claim against Eby to determine the rights and obligations of the parties under the contract. Travelers filed a motion for KBR to be joined as a Defendant. Thereafter, Travelers amended their answer to include cross-claims against KBR .

KBR filed a cross-claim against Eby, and counterclaims against Travelers requesting a determination of the rights and obligations of the parties under the contract, allegations of breach of contract, and violations of the Texas insurance code. Continental Casualty Company, National Fire Insurance Company of Hartford and Columbia Casualty Company (hereafter Continental) filed a motion for Valley Forge Insurance Company to be joined as a party, which was granted.

Before the court is a motion for partial summary judgment filed by KBR against Eby, and Eby's motion for summary judgment against KBR. The parties request the court to determine the sole issue of Eby's liability on the contractual indemnity claim filed by KBR. As stated earlier, Travelers filed a motion to join in Eby's motion.

II. Facts

1. In 1979, the Coastal Water Authority (CWA) built a three mile, 30" underground water pipeline in Harris County, Texas, (the Project) which, in some places, crossed underground pipelines owned by other companies, including Celanese Corporation (Celanese).

2. CWA contracted with Eby's predecessor, Chisholm Trail Construction Co., Inc. (Chisholm Trail) to build the water pipeline.

3. Brown & Root, Inc. (KBR's predecessor), contracted with CWA to provide construction management for the Project.

4. Brown & Root's responsibilities included the observation and monitoring of Eby's construction activities while building the water pipeline.

5. KBR was an intended named beneficiary of the CWA Contract and is referred to in the CWA Contract as either "Brown & Root, Inc." or "Engineer."

6.  On or about July 6, 2006, Celanese sued KBR and Eby in case number 06-2265, *Celanese Corporation v. Coastal Water Authority and Kellogg, Brown & Root, Inc.*, Houston Division (underlying suit).

7.  Celanese claimed it discovered that its methanol pipeline had ruptured, releasing methanol into the surrounding soil and ground water and that it took steps to remediate the contamination from the release of methanol and investigate its cause.  Celanese contended that the ruptured pipeline was the result of Eby hitting the Celanese pipeline with a backhoe during the construction of the CWA water pipeline.  Celanese claimed damages incurred in repairing the property damage to the pipeline and for clean-up costs.

8.  Celanese brought fraud, public nuisance, trespass, Texas Solid Waste Disposal Act (SWDA) and Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA) claims against Eby and KBR.

9.  The court dismissed all but the SWDA and CERCLA claims prior to trial.

10.  In August 2008, KBR demanded indemnity from Eby.  Eby refused to indemnify KBR.

11.  At the same time Eby was refusing to indemnify KBR, it was demanding that its insurers cover KBR's indemnity claim against EBY.

12.  The underlying suit was tried March 9-20, 2009, involving 24 witnesses and 478 exhibits.  The jury in the underlying suit returned a favorable verdict for KBR.

13.  The jury in the underlying suit found that the Celanese Pipeline was damaged as a result of Eby's actions, but that neither Eby nor KBR knew about the damage.

14.  The trial court in the underlying suit issued an Order following the trial, setting forth

4

findings of fact and conclusions of law.

15. The court found that "absent the damage to the coating and absent the dent, this failure would have never happened."

16. KBR was found not liable under CERCLA and SWDA in the underlying suit.

17. In defending the underlying suit, KBR incurred substantial fees and expenses.

18. Eby has not paid KBR for the fees and expenses incurred by KBR as a result in defending the underlying suit.

III. Jurisdiction

Jurisdiction is properly before the court pursuant to 28 U.S.C. § 1332(c)(1) and 28 U.S.C. § 1332.

IV. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc., 259 F.3d 1226, 1231-1232 (10th Cir. 2001) quoting Adler v. Wal-Mart Stores, 144 F.3d 664, 670 (10th Cir. 1998). "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler, 144 F.3d at 670. The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgement. Atl. Richfield

Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000). The burden of

showing that no genuine issue of material fact exists is borne by the moving party. E.E.O.C. v.

Horizon / MS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000). Once the moving party

meets the burden, the nonmoving party must demonstrate a genuine issue for trial on a material

matter. Concrete Works, Inc. v. City & County of Denver, 36 F.3d 1513, 1517 (10th Cir. 1994).

V. Discussion

A. Governing Law

Both parties agree that Texas law governs the determination of the contractual

obligations of the parties.

B. Indemnity Provision

The parties entered into a contract, which contained the indemnity provision, located in

the Construction Specifications, under the section titled "Special Conditions." The subheading

is titled "protection of existing structures and facilities." The indemnity provision reads as

follows:

> "The contractor [Eby] agrees that he has sole responsibility for the protection of
> facilities, structures, and properties inside and outside the limits of construction
> and agrees to indemnify and hold harmless the Owner, the Engineer [KBR], and
> owners of adjoining properties from and against any and all damages, claims,
> demands, suits, and judgment costs including attorney's fees and expenses for or
> on account of damage to property of any person, firm, corporation, company, or
> government agency, or death of or injury to any person or persons (including
> property and employees of the Coastal Industrial Water Authority, Brown &
> Root, Inc., the Contractor, and employees of the Contractor), directly or indirectly
> arising from or caused by or in connection with the performance or failure to
> perform any work provided for hereunder by the Contractor, his subcontractors,
> or their or the Contractor's agents, servants, or employees. It is agreed and
> understood that in the prosecution of work under the provisions hereof, the
> Contractor is and shall continue to be an independent contractor."

Indemnity agreements are construed under the normal rules of contract construction.

Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 423 (Tex 2000).  The primary goal is to

determine the parties' intent.  Id.  For an indemnity provision to be enforceable, three elements

must exist:  (1) the intent of the parties must be clear; (2) it must be set forth within the four

corners of the agreement; and  (3) the specific intent of the parties must be expressed.  Adams

Resources Exploration Corp. v. Resource Drilling, Inc., 761 S.W.2d 63, 65 (Tex.App. 1988).

An indemnitee may recover litigation costs incurred while enforcing an indemnity agreement,

even if the costs are not specifically covered by the agreement.  Continental Steel Co. v. H.A.

Lott, Inc., 772 S.W.2d 513, 517 (Tex.App. 1989).

The agreement between the parties clearly states that the Contractor (Eby) is to hold the

Engineer (KBR) harmless for any damage to property of any person, made directly or indirectly

in connection with the performance of their work.  The provision is set forth in the contract

specification.  Although the contract specification is a lengthy document, the court notes the

document includes sections regarding Notice to Bidders, Instructions to Bidders, Contract,

Performance and Payment Bonds, General Conditions, Special Conditions, and Technical

Specifications.  Clearly, the parties intended the document to cover the entire agreement between

the parties.

C.  Fair Notice Doctrine

Indemnification provisions operate to transfer risk from one party to another, therefore

Texas courts developed fair notice requirements to apply to the indemnification provisions.

Dresser Indus., Inc. v. Page Petroleum, Inc. 853 S.W.2d 505, 508 (Tex. 1993).  A contract that

fails to satisfy either of the fair notice requirements when imposed is unenforceable as a matter

of law.  Storage & Processors, Inc. v. Reyes, 134 S.W.3d 190, 192 (Tex. 2003).  The fair notice

requirement includes the express negligence doctrine and the conspicuousness requirement.

Enserch Corp. v. Parker, 794 S.W.2d 2, 8 (Tex. 1990). The express negligence doctrine states

that a party seeking indemnity from the consequences of the party's own negligence must

express that intent in specific terms within the four corners of the contract. Ethyl Corp. v. Daniel

Constr. Co., 725 S.W.2d 705, 707-08 (Tex. 1987). If not, the indemnity provision is

unenforceable as a matter of law. Gulf Coast Masonry, Inc. v. Owens-Illinois, Inc., 739 S.W.2d

239 (Tex. 1987). The express negligence requirement is not an affirmative defense but a rule of

contract interpretation. Monsanto Co. v. Owens-Corning Fiberglas, 764 S.W.2d 293, 296

(Tex.App. 1988). The conspicuous requirement mandates that something must appear on the

face of the contract to attract the attention of a reasonable person when he looks at it. Dresser

Indus. 853 S.W.2d at 508.

Eby argues that the indemnity provision is governed by the fair notice doctrine. In

support of this argument, Eby relies on Dresser, in which the Texas Supreme Court held that the

fair notice requirements that apply to indemnity agreements also apply to a release. Id. at 509.

The Court recognized that indemnity agreements were an "extraordinary shifting of risk," and

therefore the fair notice requirements applied. Id. at 508. The court then reviewed the fair notice

requirements as they applied to indemnity agreements, before ruling that the fair notice

requirements also applied to releases. Id. at 509. However, the court specifically noted, when

discussing the fair notice requirements, that "it is important to note that our discussion today is

limited solely to those types of releases which relieve a party in advance of liability for its own

negligence." Id. at 507. The Texas Supreme Court affirmed this holding in Green Intern., Inc.

v. Solis, 951 S.W.2d 384 (Tex. 1997). In Green, the court found that the fair notice doctrine did

not apply because the provision in question did not shift Green's liability for third party claims

to Solis, therefore it did not constitute the type of extraordinary risk-shifting contemplated in

Dresser.  Id. at 387.  The court specifically stated that "our holding in Dresser is explicitly

limited to releases and indemnity clauses in which one party exculpates itself from its own future

negligence."  Id.  In a recent decision by the Southern District of Texas, the court found that the

"express negligence component of the fair notice doctrine is not applicable where an indemnitee

is seeking indemnification for claims not based upon its own negligence."  Harris Const. Co.,

LTD. v. GGP-Bridgeland, L.P., 698 F.Supp.2d 723, 729 (S.D.Tex. 2010), citing DDD Energy v.

Veritas DGC Land, Ind., 60 S.W.3d 880, 885 (Tex.App. 2001).

The express negligence test has not been applied in cases in Texas where the indemnitee

is seeking to be indemnified for the indemnitor's wrongful act.   In Gulf Ins. Co. v. Burns

Motors, Inc., the Court found that when an indemnity agreement "does not contemplate

indemnifying the indemnitee from consequences of his own negligence," the express negligence

doctrine does not apply.  22 S.W.3d at 424.  In Continental Steel Co. v. H.A. Lott, Inc., 772

S.W.2d 513 (Tex.App. 1989), the court found that the express negligence doctrine did not apply

to the determination of an indemnitor's duty to indemnify when an indemnitee is found not

negligent and is not seeking reimbursement for loses that are not related to the indemnitee's

negligence.  Id. at 516.

In M.M.Sundt Const. Co. v. Contractors Equipment Co., 656 S.W.2d 643 (Tex.App.

1983) the court held that "where damages result from conduct for which indemnity is provided

and which does not involve the negligence of the indemnitee, liability is established."  Id. at 645,

citing Monical & Powell, Inc. v. Bechtel Corporation, 404 S.W.2d 911 (Tex.App. 1966).  In

MAN GHH Logistics GMBH v. Emscor, Inc., the court held that "the express negligence rule does not apply in this case because appellants are not seeking to recover for their own negligence." 858 S.W.2d 41, 43 (Tex.App. 1993). Delta Drilling Co. v. Cruz, 707 S.W.2d 660 (Tex.App. 1986) was decided before the courts applied the express negligence doctrine to indemnity provisions. However, it is important to note that the Delta case held that under the clear and unequivocal test, the standard in place at the time, the court found the test was "only applicable where the indemnitee seeks to absolve itself of its own negligence." Id. at 668. Therefore, the court determined the clear and unequivocal test was not applicable. Id. "The Texas courts have declined to apply the 'express negligence' test where the facts indicate that no attempt is made to recover for the indemnitee's negligence, regardless of the language of the indemnity clause." Philip L. Bruner and Patrick J. O'Connor, Jr., 3 Bruner & O'Connor on Construction Law § 10:13 (West 2010).

In the case at hand, the indemnity provision provides that the contractor, Eby, will hold the Engineer, KBR, harmless "from and against any and all damages, claims, demands, suits, and judgment costs including attorney's fees and expenses for or on account of damage to property of any person, firm, corporation, company, or government agency . . . directly or indirectly arising from or caused by or in connection with the performance or failure to perform any work provided for hereunder by the Contractor, his subcontractors, or their or the Contractor's agents, servants, or employees." There is no mention in the indemnity language that KBR will be held harmless for their own negligence. The indemnity provision in this case is not an "extraordinary shifting of risk" as contemplated by Dresser and Ethyl. This provision obviously does not relieve KBR of its own negligence.

The cases cited above make clear that the Texas courts did not intend for the fair notice doctrine requirements of express negligence and conspicuousness to apply when the indemnity provision does not shift liability of the indemnitee to the indemnitor.

Eby argues that KBR is alleged to have performed intentional negligent acts, and that as an intentional wrongdoer, KBR is not entitled to indemnity. However, as stated above, the court does not read the indemnity provision to provide indemnity to KBR for it's own negligent acts. The provision provides indemnity to KBR for Eby's damage to property. Furthermore, the indemnity provision does not contain language related to intentional wrongdoing on the part of the engineer.

D.  Strict Liability

Eby argues that Texas courts have applied the express negligence doctrine to strict liability. Eby argues that the claims in the underlying suit are based in strict liability, therefore, if the indemnity provision does not specifically mention strict liability, Eby is not required to indemnify KBR.

The Texas Supreme Court has ruled that the express negligence doctrine applies to indemnification for strict liability claims. Houston Lighting and Power Co. v. Atchison, Topeka, & Santa Fe Ry. Co., 890 S.W.2d 455, 459 (Tex. 1994). In Fisk Elec. Co. v. Constructors & Associates, Inc., 888 S.W.2d 813 (Tex. 1994), the court held that the parties to an indemnity agreement must expressly state their intention to cover strict liability claims in specific terms. Id. at 815-16. If there is no mention of strict liability, the indemnity provision does not extend to claims based on strict liability. Houston Lighting and Power Co., 890 S.W.2d at 459. "Without an express reference in the indemnification provision of claims based upon negligence, there is

11

no indemnity for defense costs incurred in connection with a negligence claim irrespective of whether the claim is ultimately proved." Fisk at 816.

However, in both HL & P and Fisk, the court was reviewing indemnity agreements in which the indemnitee was seeking to avoid liability for its own negligence, which gave rise to strict liability claims. As previously discussed, KBR is not seeking to avoid liability for its own negligence, KBR is seeking to avoid liability for Eby's negligence.

In an unpublished opinion, the Texas Appeals Court found that the express negligence doctrine is not relevant to a case where the indemnitee is seeking indemnification against the consequences of the indemnitor's actions. Texas Dept. of Transp. v. Metropolitan Transit Authority of Harris County, 2002 WL 724927 at 2 (Tex.App. 2002). The Court found that Fisk and H L & P did not apply because those cases involved the application of the express negligence doctrine in cases where the indemnitee was seeking to apply the indemnity provision against the consequences of its own negligence. Id. Following the Metropolitan case, another Appeals Court, in a published opinion, also ruled that the express negligence doctrine as cited in Ethyl does not apply to cases where the indemnitee is seeking to apply the indemnity provision, when the indemnitee was not negligent. Paragon General Contr., Inc. v. Larco Constr., Inc., 227 S.W.3d 876, 889 (Tex.App. 2007). "In order for Fisk to apply at all, the indemnity agreement at issue must first intend to seek indemnity for the indemnitee's own negligence." Bell Helicopter Textron Inc., v. Houston Helicopters, Inc., 2010 WL 780943 at 29 (Tex.App. Feb. 16, 2010).

Eby's claim that the express negligent doctrine applies to strict liability claims is correct and supported by Texas case law. However, Texas courts have not departed from the application of the fair notice doctrine, which has only been applied to cases in which indemnitee is seeking

to shift liability for its own negligence. Eby has not cited to a case to show that the courts apply

the fair notice doctrine in strict liability cases in which the indemnitee is not seeking to shift the

liability for their own negligence. Therefore, the fair notice doctrine is not applicable to the

indemnity provision in the contract at issue.

E. Duty to Indemnify

Eby argues that the duty to indemnify is based on the claims of the underlying suit, not

on the end result of the underlying suit. Eby argues that the claims in the underlying suit are

based on negligence and strict liability, as well as claims for fraud, public nuisance and

restitution. Eby argues that Celanese alleged the acts committed by KBR were intentional acts.

Eby also argues that the indemnity provision is not applicable because it does not cover the

alleged failures of KBR. In support of this argument, Eby states that no right of indemnity in

favor of KBR would have existed had Celanese prevailed in the underlying suit. KBR argues

that the underlying suit contained allegations of strict liability, as well as fraud, public nuisance,

and restitution, therefore, even if the indemnity provision did not cover the strict liability claims,

the other claims were covered by the provision.

Texas courts have considered whether a party has a duty to indemnify in a number of

cases, many of them based in insurance disputes. In Pine Oak Builders, Inc. v. Great Am.

Lloyds Ins. Co., 279 S.W.3d 650 (Tex. 2009), the court found that the duty to indemnify turns on

"the facts actually established in the underlying suit." Id. at 656. In D.R. Horton-Texas, Ltd. v.

Markel International Ins. Co., 300 S.W.3d 740 (Tex. 2009), the court found that the findings of

the underlying suit, and not simply the underlying pleadings, should be considered to determine

indemnity. Id. at 741.

In <u>Fisk Elec. Co. v. Constructors & Associates, Inc.</u>, relied on by Eby, the court decided that the obligation to indemnify should not depend on the outcome of the underlying suit. 888 S.W.2d at 815. The court went on to state that the duty to defend should be determinable at the outset, based on the claims in the underlying suit and the clear and enforceable indemnity agreement, not on the outcome of the underlying suit. <u>Id.</u>. However, the duty to defend is different than the duty to indemnify. The duty to defend is based on the pleadings, but the duty to indemnify is based on jury findings. <u>Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.</u>, 106 S.W.3d 118, 125 (Tex.App. 2002).

In <u>Tesoro</u>, the court found that the duty to indemnify is triggered by the facts, not merely any underlying pleadings. <u>Id.</u> The question in <u>Tesoro</u> was whether Nabors had committed gross negligence and whether Tesoro was excused of its duty to indemnify Nabors. There was a contract between the parties that contained an indemnity agreement. <u>Id.</u> at 122. Tesoro agreed to indemnify Nabors for all claims, except claims relating to the gross negligence or willful misconduct of a party. <u>Id.</u> at 125. Tesoro attempted to rely on <u>Fisk</u>, arguing that it was not required to indemnify Nabors for Nabors's defense against the claims in the underlying suit. The court found that <u>Fisk</u> did not apply. The question in <u>Fisk</u> was whether the "indemnitor had a duty to provide a defense against negligence to the indemnitee when it was unclear whether the indemnity agreement covered negligence." <u>Id.</u> Tesoro argued that the pleadings in the underlying suit asserted gross negligence and willful misconduct claims, therefore, Tesoro did not have an obligation to indemnify on those claims. <u>Id.</u> The court disagreed, finding that "facts, however, not allegations, determine an indemnitor's duty to indemnify. The duty to defend may be triggered by the pleadings, but the duty to indemnify is based on the jury's

14

findings." Stated simply, "[T]he duty to indemnify is not based on the third party's allegations, but upon the actual facts that underlie the cause of action and result in liability." Canutillo Indep. Sch. Dist. V. Nat'l Union Fire Ins. Co., 99 F.3d 695, 701 (5th Cir. 1996)(applying Texas law).

The underlying suit, filed by Celanese, asserted claims of strict liability pursuant to CERCLA and SWDA, fraud, public nuisance, and restitution. However, as stated above, the duty to indemnify arises based on the facts and the findings in the underlying suit.

The verdict form from the underlying suit contained the following questions and answers:

Do you find from a preponderance of the evidence that Eby knew that it damaged the Celanese methanol line in 1979?

No.

Do you find from a preponderance of the evidence that Brown & Root knew that Eby damaged the Celanese methanol line in 1979?

No.

Do you find from a preponderance of the evidence that Eby decided to backfill the excavation for the 30" waterline knowing that the 1979 damage to the Celanese methanol line could result in a leak?

No.

Do you find from a preponderance of the evidence that Brown & Root decided not to prevent Eby from backfilling the excavation for the 30" waterline knowing that the 1979 damage to the Celanese methanol line could result in a leak?

No.

Do you find from a preponderance of the evidence that the release of methanol would not have occurred but for the 1979 damage to the Celanese methanol line?

Yes.

In the Judge's Findings of Fact and Conclusions of Law (Eby Exh. 1), the Judge made the

following findings:

> An unknown Eby employee operating a backhoe struck and damaged the methanol pipeline.
> The dented portion of the pipeline was neither exposed nor in plain view prior to the backfilling.
> The 1979 strike on the Celanese methanol pipeline was not contemporaneously reported or recorded by Eby, Brown & Root, Celanese, or anyone else.
> The Eby employee who struck the pipeline did not know what he hit.
> Neither Eby nor any of its employees knew that the Celanese methanol line had been damaged by its work on the CWA line.
> Eby's decision to backfill the ecavation was made without knowledge that the Celanese methanol line had been damaged.
> Neither Brown & Root nor any of its employees knew that Eby had damaged the Celanese methanol line.
> Brown & Root's decision to allow Eby to backfill the excavation was made without knowledge that the Celanese methanol line had been damaged.
> Based on the jury's finding of fact, the court concludes that Eby is not a person responsible for solid waste under the SWDA.
> Based on the jury's finding of fact, the court concludes that Brown & Root is not a person responsible for solid waste under the SWDA.
> Having found that Eby did not know that the Celanese methanol pipeline had been damaged, the court concludes that Eby is not liable to Celanese as an arranger for disposal of a hazardous substance under CERCLA.
> Having found that Brown & Root did not know that the Celanese methanol pipeline had been damaged by Eby, the court concludes that Brown & Root is not liable to Celanese as an arranger for disposal of a hazardous substance under CERCLA.

Clearly, the facts in the underlying suit show that Eby damaged the pipeline, neither Eby nor

KBR knew that the pipeline was damaged, neither Eby nor KBR intentionally tried to cover up

the damage to the pipeline, and neither Eby nor KBR were liable for the clean up of the spill

related the damaged pipeline.

Eby consistently refers back to the claims in the underlying suit in arguing that KBR was

sued for it's intentional actions.  Eby bases this argument on the fact that KBR had a duty, as set

out in the contract, to supervise the work performed by Eby. Eby states "Celanese's claims against KBR were not derivative but direct. They were based upon Celanese's belief that KBR independently made decisions which made it an arranger under CERCLA and SWDA." (Eby's Brief, Doc. 93). However, as stated above, the jury found that KBR did not know about the damage to the pipeline, and did not intentionally backfill over the damaged pipeline. The fact that KBR was sued based on claims of intentional acts is inapposite considering the facts established that KBR did not act intentionally and was found not liable.

The facts in the underlying suit establish that Eby was responsible for the damage to the pipeline, although it was not intentional. The findings establish that if the indemnity agreement covers this type of conduct of Eby, then Eby will be obligated to indemnify KBR for costs associated with the damage to the pipeline.

 F. Contract

KBR filed this indemnity action based on breach of contract by Eby. Under Texas law, indemnity agreements are construed "under the normal rules of contract construction." Associated Indem. Corp. v. CAT Contracting Inc., 964 S.W.2d 276, 284 (Tex. 1998). In construing a written agreement, the court should ascertain the intentions of the parties as expressed in the contract. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 662 (Tex. 2005). The terms of a contract are given their plain, ordinary, and generally accepted meaning unless the contract states they are to be used in a different sense. Heritage Resources, Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). An indemnity agreement is unambiguous if it can be given a definite or certain legal meaning. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).

The essential elements in a suit for breach of contract are: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. Hussong v. Schwan's Sales Enters., Inc., 896 S.W.2d 320, 326 (Tex.App. 1995).

The terms of the indemnity agreement set forth that Eby was responsible for the protection of the facilities, structures, and properties associated with the construction of the pipeline. Eby agreed to indemnify and hold harmless KBR against any suits for "damages, claims, demands, suits, and judgment costs including attorney's fees and expenses for or on account of damage to property of any person, firm, corporation, company, or government agency . . . directly or indirectly arising from or caused by or in connection with the performance or failure to perform any work provided" by Eby.

Clearly, Eby had a contractual duty to indemnify KBR in the underlying suit. The underlying suit was filed against KBR for damage to property of a corporation directly relating to the work of Eby in the construction of the pipeline. As stated previously, the facts in the underlying suit establish that Eby hit and damaged a pipeline belonging to Celanese. As a result of this damage, methanol gas began to leak out of the pipeline, contaminating the soil and water. The indemnity provision applies to damage to property resulting from Eby's direct or indirect performance of the contract. The damage to the pipeline is a direct result of Eby's performance of the contract, and the resulting contamination is an indirect result of the damage to the pipeline. The indemnity provision applies to the actions at issue in the underlying suit. Eby does not dispute that the contract between the parties was a valid contract. Eby does not dispute that failure to indemnify KBR results in a breach of contract.

18

Damages in a breach of contract claim provide just compensation for any loss or damages actually sustained as a result of the breach. Mays v. Pierce, 203 S.W.3d 564, 577 (Tex.App. 2006). The injured party should be restored to the economic position it would have been in had the contract been performed. Id. KBR's damages amounts to litigation costs and attorney fees from the underlying lawsuit. Eby is obligated to indemnify KBR, pursuant to the contract, for attorney's fees and litigation expenses in the underlying lawsuit.

KBR also requests attorney fees in this case as well. Under Texas law, a prevailing party cannot recover attorney's fees unless permitted by statute or by contract between the parties. Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 95 (Tex. 1999). A party who prevails on a breach of contract claim is entitled to recover attorney's fees for prosecution of the claim, in addition to the amount of a valid claim and costs. Tex.Civ.Prac. & Rem.Code Ann. § § 38.002 and 38.001(8). "A person may recover reasonable attorney's fees from an individual or corporation, *in addition to the amount of a valid claim and costs...*" § 38.001. A party may also recover attorney's fees as part of a contractual term. Alma Group, L.L.C. v. Palmer, 143 S.W.3d 840, 845 (Tex.App. 2004). In Devon SFS Operating, Inc. v. First Seismic Corp., 2006 WL 374257 (Tex.App. 2006), the court found that after the party prevailed on the breach of contract claim in the indemnity action, the party was entitled to attorney's fees, expenses, and costs pursuant to section 38.001(8). Id. at 11.

A valid contract existed between KBR and Eby. Eby breached the contract when it refused to indemnify KBR in the underlying suit. KBR is entitled to attorney's fees, expenses and costs related to the litigation of this claim.

VI.  Conclusion

IT IS THEREFORE ORDERED that KBR's Motion for Partial Summary Judgment

(Doc. 69) is granted.

IT IS FURTHER ORDERED that Eby's Motion for Summary Judgment (Doc. 93) is

denied.

IT IS FURTHER ORDERED that KBR's Motion for Oral Arguments (Doc. 102) is

denied.

IT IS SO ORDERED this 22nd day of February, 2011.


                                         s/ Wesley E. Brown
                                        Wesley E. Brown
                                        Senior United States District Court Judge