IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARTIN K. EBY CONSTRUCTION COMPANY, INC., | ) ) ) |
| Plaintiff, | ) **CIVIL ACTION** ) |
| v. | ) No.  08-1250-MLB ) |
| ONEBEACON INSURANCE COMPANY, | ) ) |
| Defendant. | ) ) |
| CONTINENTAL CASUALTY COMPANY, et al., | ) ) ) |
| Plaintiffs, | ) **CIVIL ACTION** ) |
| v. | ) No.  08-2392-MLB ) |
| ONEBEACON INSURANCE COMPANY, successor in interest to COMMERCIAL UNION INSURANCE COMPANY, et al., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

Before me are the following:

1. Eby's argument that Judge Wesley E. Brown's Memorandum and Order of February 22, 2011 (Doc. 119) is "in error" (Doc. 237 at 21-25);

2. OneBeacon's argument that Judge Brown's Memorandum and Order entering summary judgment against Eby should be "reversed" (Doc. 256 at 6-29);

3. KBR's response to Eby's argument (Doc. 267);

4. Eby's reply (Doc. 268); and

5. KBR's surreply (Doc. 269).

Judge Brown ruled that Eby must indemnify KBR for its costs and attorneys' fees in connection with the Texas lawsuit in which the jury

found in favor of KBR.  It does not appear that any party sought timely reconsideration of Judge Brown's ruling.  Indeed, it was not until March 2012 that Eby raised its "Judge Brown's decision is in error" argument.  One month later, in April 2012, OneBeacon essentially announced its agreement with Eby's argument.  Not surprisingly, KBR has opposed any reconsideration of Judge Brown's ruling, arguing that reconsideration is untimely and, in any event, that Judge Brown's ruling was and remains correct.  Albeit with some reluctance, I allowed Eby and then KBR to file, respectively, a reply and surreply. The parties' arguments are mostly variants of those which they made, or could have made, in earlier submissions.

The threshold question is whether Eby and OneBeacon's arguments should be entertained at all.  In their submissions (Docs. 237 and 256), both launch into their criticisms of Judge Brown's ruling without so much as a passing nod to rules.  KBR responds by pointing to local rule 7.3 which requires that motions to reconsider non-dispositive orders be filed within 14 days.  Eby replies that Judge Brown's ruling was not final under Rule 54(b) and thus can be reconsidered at any time.

I find that I have the discretion to revisit Judge Brown's ruling. This is a fairly difficult case which was assigned to me following Judge Brown's death.  It makes sense to resolve disputed issues on the merits rather than by technical application of rules regarding time limits.  <u>See</u> Fed. R. Civ. P. 1 and local rule 1.1(b)(2).[1] This is particularly true where, as here, the prior ruling

---

[1] I have reviewed the following submissions which include references to the indemnity issues: Docs. 70, 94, 95, 99, 101 and 108.

-2-

forms the foundation for several claims yet to be decided.

## Factual History

The significant underlying facts are set out in Judge Brown's memorandum and order and are not disputed. Somewhat simplified, in 1979, Eby contracted to build a water pipeline in Harris County, Texas. KBR was the construction manager or "engineer" on the project. There were old pipelines in the area, including a methanol pipeline owned by Celanese. Sometime around 2006, a leak was discovered in the methanol pipeline which, among other things, resulted in soil and ground water contamination which required extensive (and expensive) remediation.

Celanese sued Eby and KBR, claiming that its methanol pipeline had been damaged during construction of the water pipeline. The case eventually went to a jury which determined that Eby had damaged the methanol pipeline but that neither Eby nor KBR was aware of the damage. The jury rejected Celanese's claim that KBR allowed Eby to backfill the excavation with knowledge that the damaged pipeline could leak. The jury thus found that KBR was not liable to Celanese but, of course, KBR incurred substantial attorneys' fees and expenses in defending the suit which it now seeks to recover from Eby on the theory that Eby contractually agreed to indemnify KBR.

There was an indemnity provision in the "CONSTRUCTION SPECIFICATIONS" of the lengthy water pipeline project contract which provided:

> "The contractor [Eby] agrees that he has sole responsibility for the protection of facilities, structures, and properties inside and outside the limits of construction and agrees to indemnify and hold harmless the Owner, the Engineer [KBR], and owners of adjoining

>     properties from and against any and all damages, claims,
>     demands, suits, and judgment costs including attorney's
>     fees and expenses for or on account of damage to property
>     of any person, firm, corporation, company, or government
>     agency, or death of or injury to any person or persons
>     (including property and employees of the Coastal Industrial
>     Water Authority, Brown & Root, Inc., the Contractor, and
>     employees of the Contractor), directly or indirectly
>     arising from or caused by or in connection with the
>     performance or failure to perform any work provided for
>     hereunder by the Contractor, his subcontractors, or their
>     or the Contractor's agents, servants, or employees.  It is
>     agreed and understood that in the prosecution of work under
>     the provisions hereof, the Contractor is and shall continue
>     to be an independent contractor.

(Doc. 72 at 22).

The parties agree that Texas law applies but they disagree about how it applies.

### Texas Supreme Court Cases

Indemnity agreements have a litigious history in Texas courts. The first case of note is <u>Ethyl Corporation v. Daniel Construction Company</u>, 725 S.W.2d 705 (Tex. 1987). Both Ethyl and Daniel were found negligent in a suit brought by an injured Daniel employee. Ethyl, as owner, sought indemnity from Daniel, as contractor, under a contract provision which read:

>     Contractor shall indemnify and hold Owner harmless against
>     any loss or damage to persons or property as a result of
>     operations growing out of the performance of this contract
>     and caused by the negligence or carelessness of Contractor,
>     Contractor's employees, Subcontractors, and agents or
>     licensees.

A Texas court of appeals had found the provision did not require Daniel to indemnify Ethyl for Ethyl's own negligence or for the parties' concurrent negligence because it did not meet the "clear and unequivocal test," which was:

>     . . . whether the contract between the parties expresses in
>     clear and unequivocal language the intent of the indemnitor

>   to indemnify the indemnitee against the consequences of the indemnitee's own negligence whether such negligence was the sole proximate cause of the injury or a proximate cause jointly and concurrently with the indemnitor's negligence.

Ethyl, 725 S.W.2d at 707 (internal citation omitted).

The Texas Supreme Court affirmed and announced its firm decision to reject the "clear and equivocal test" in favor of the so-called "express negligence doctrine" because:

>   As we have moved closer to the express negligence doctrine, the scriveners of indemnity agreements have devised novel ways of writing provisions which fail to expressly state the true intent of those provisions. The intent of the scriveners is to indemnify the indemnitee for its negligence, yet be just ambiguous enough to conceal that intent from the indemnitor. The result has been a plethora of law suits to construe those ambiguous contracts. We hold the better policy is to cut through the ambiguity of those provisions and adopt the express negligence doctrine.
>
>   [P]arties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms. Under the doctrine of express negligence, the intent of the parties must be specifically stated within the four corners of the contract. We now reject the clear and unequivocal test in favor of the express negligence doctrine. In so doing, we overrule those portions of Joe Adams & Son v. McCann Construction Co., Ohio Oil Co. v. Smith, and Mitchell's, Inc. v. Friedman stating it is unnecessary for the parties to say, "in so many words," they intend to indemnify the indemnitee from liability for its own negligence. Joe Adams & Son v. McCann Construction Co., 475 S.W.2d 721, 723 (Tex. 1971); Ohio Oil Co. v. Smith, 365 S.W.2d 621, 624 (Tex. 1963); Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775, 779 (1957).

Ethyl, 725 S.W.2d at 707-08.

Ethyl was followed two months later by Gulf Coast Masonry, Inc. v. Owens-Illinois, 739 S.W.2d 239 (Tex. 1987). A Gulf Coast employee suffered a job-related injury and sued Owens. Owens, in turn, sought indemnity from Gulf Coast. The indemnity provision provided:

>   Contractor [Gulf Coast] agrees to indemnify and save owner [Owens-Illinois] harmless from any and all loss sustained by owner by reason of damage to owner's property or

-5-

> operations, and from any liability or expense on account of property damage or personal injury (including death resulted therefrom) sustained or alleged to have been sustained by any person or persons, including but not limited to employees of owner, contractor and subcontractors, arising out of or in any way connected with or attributable to the performance or non-performance of work here under by contractor, its subcontractor(s) and their respective employees and agents, or by any act or omission of contractor, its subcontractor(s), and their respective employees and agents while on owner's premises, or by defects in material or equipment furnished hereunder . . .

The supreme court simply noted, without further explanation, that the provision did not meet the "express negligence test" announced in Ethyl and affirmed the trial court's decision that the provision was "unenforceable as a matter of law."[2] Gulf Coast, 739 S.W.2d at 239.

In Atlantic Richfield Company v. Petroleum Personnel, Inc., 768 S.W.2d 724 (Tex. 1989), a Petroleum Personnel employee was injured while working on an Atlantic Richfield oil platform. The employee sued Atlantic Richfield which then sought indemnity from Petroleum Personnel. This time the Texas Supreme Court found that the following indemnity provision met the "express negligence test":

> CONTRACTOR [PPI] agrees to hold harmless and unconditionally indemnify COMPANY [ARCO] against and for all liability, cost, expenses, claims and damages which [ARCO] may at any time suffer or sustain or become liable for by reason of any accidents, damages or injuries either to the persons or property or both, of [PPI], or of the workmen of either party, or of any other parties, or to the property of [ARCO], in any matter arising from the work performed hereunder, *including but not limited to any negligent act or omission of [ARCO]*, its officers, agents or employees.... (emphasis added).

---

[2] The indemnity provision in Gulf Coast was drafted before the decision in Ethyl, just as was the provision in this case. Although the supreme court did not address the issue, the logical conclusion is that it intended to apply the "express negligence test" whether or not the indemnity provision was drafted before Ethyl.

-6-

The court concluded:

> Therefore, we hold that this language meets the requirements of the express negligence rule. Although the language does not differentiate between degrees of negligence, the language "any negligent act of ARCO" is sufficient to define the parties' intent. Usage of the terms "joint," "concurrent" or "comparative contractual" would not add to the expression of intent to exculpate ARCO for its negligence.

Atlantic Richfield, 768 S.W.2d at 726 (footnote omitted). In addition, the court explained why the provision in Gulf Coast did not satisfy the "express negligence test":

> Although the agreement in Gulf Coast specified the contractor's duty to indemnify the owner for claims resulting from the *contractor's* acts, it failed to state, with equal specificity, the obligation to indemnify for claims resulting from acts of other parties (i.e. owner). Further, the contractor may have reasonably assumed that if it were to indemnify the owner for the acts of other parties, this requirement also would have been stated in specific terms.

In 1994, the Texas Supreme Court decided Fisk Electric Company v. Constructors & Associates, Inc., 888 S.W.2d 813 (Tex. 1994). An employee of Fisk was injured on the job site and filed a negligence action against Constructors. Constructors sought indemnity from Fisk for Constructors' attorney's fees and expenses. One of Texas' numerous courts of appeal allowed Constructors to recover its attorneys fees and costs under an indemnity provision which admittedly did not comply with the "express negligence test" because the provision did not expressly indemnify Constructors' own negligence.[3]

---

[3]The court of appeals opinion, 880 S.W.2d 424 (Tex.App.1993) sets out the provision:
> ... [Fisk] shall indemnify, hold harmless, and defend [Constructors], ... from and against all claims, damages losses, and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of [Fisk's] work ... provided that any such

-7-

The supreme court said there could be no recovery:

> We hold that no obligation to indemnify an indemnitee for the costs or expenses resulting from a claim made against it for its own negligence arises unless the indemnification agreement complies with the express negligence test. Therefore, we reverse the judgment of the court of appeals and render judgment for Fisk.

888 S.W.2d at 813-14.

The Court also noted that Texas courts of appeals ". . . have split in their application of the express negligence test in determining whether an indemnitor [here, Eby] must pay the costs of defense for an indemnitee [here, KBR] accused of negligence." The court clearly resolved the split and then explained:

> The express negligence requirement is not an affirmative defense but a rule of contract interpretation. See Monsanto [Monsanto Co. v. Owens-Corning Fiberglas, 764 S.W.2d 293, 296 (Tex. App.—Houston [1st Dist.] 1988, no writ)]. Issues of contract interpretation are determinable as a matter of law. See Gulf Coast Masonry [Inc. v. Owens-Illinois, Inc., 739 S.W.2d] 239-40 (Tex. 1987). This Court in Ethyl established that indemnity provisions that do not clearly provide for indemnification for the indemnitee's own negligence do not, as a matter of law, indemnify the indemnitee for its own negligence. Fisk's obligation to pay attorney's fees arises out of its duty to indemnify. Absent a duty to indemnify there is no obligation to pay attorney's fees. Cases from the courts of appeals holding to the contrary are hereby disapproved.

* * *

By Constructors' own admission, if the plaintiff in the

---

claim, damage, loss, or expense (a) is attributable to bodily or personal injury, sickness, disease, or death, or patent infringement, or to injury, ... and (b) is caused in whole or in part by any negligent act or omission or any act or omission resulting in the strict liability of [Fisk] or anyone directly or indirectly employed by it[,] anyone for whose acts it may be liable, or is caused by or arises out of the use of any products, material, or equipment furnished by [Fisk]....

-8-

>underlying suit were successful, Fisk would not be obligated to pay anything to Constructors because the agreement fails to satisfy the express negligence test. Yet, Constructors would have this Court impose on Fisk a duty to bear the costs of defense. Such a holding would be contrary to the reasoning of Ethyl. The purpose of the express negligence rule "is to require scriveners to make it clear when the intent of the parties is to exculpate an indemnitee for the indemnitee's own negligence." Atlantic Richfield Co. v. Petroleum Personnel, Inc., 768 S.W.2d 724, 726 (Tex.1989). Either the indemnity agreement is clear and enforceable or it is not. Such a determination should not depend on the outcome of the underlying suit, but should be established as a matter of law from the pleadings. The rule proposed by Constructors regarding defense expenses would leave indemnitors liable for a cost resulting from a claim of negligence which they did not agree to bear. Significantly, it would also leave indemnitors vulnerable to indemnitees who might settle cases without admitting negligence, leaving the indemnitor to pay the costs of settlement and defense. Without an express reference in the indemnification provision to claims based upon negligence, there is no indemnity for defense costs incurred in connection with a negligence claim irrespective of whether the claim is ultimately proved.

Fisk, 888 S.W.2d at 814-16.

Three weeks after deciding Fisk, the supreme court ruled in Houston Lighting & Power Company v. Atchison, Topeka and Santa Fe Railway Company, 890 S.W.2d 455, 456 (Tex. 1994) that if parties were seeking to indemnify an indemnitee against strict liability, the agreement must so state.

The most recent Texas Supreme Court decision cited by KBR (Doc. 267 at 4) and Eby (Doc. 268 at 3) is D.R. Horton-Texas, Ltd. v. Markel International Insurance Company, Ltd., 300 S.W.3d 740 (Tex. 2009). The case does mention indemnity, but not in the context of the "express negligence test." Rather, the case involved the following scenario:

>In this dispute, a general contractor, as an additional insured on its subcontractor's commercial general liability (CGL) insurance policy, seeks a defense and coverage from

-9-

> the CGL insurer for alleged construction defects. The insurer claims that it has no duty, under the eight-corners doctrine, to provide a defense because the homeowners' petition in the underlying liability action did not implicate the insured, the subcontractor that performed the allegedly defective work. Further, because it has no duty to provide a defense, it claims it has no duty to indemnify the general contractor as well. We hold that the duty to indemnify is not dependent on the duty to defend and that an insurer may have a duty to indemnify its insured even if the duty to defend never arises. In determining coverage, a matter dependent on the facts and circumstances of the alleged injury-causing event, parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify.

The court goes on to discuss at some length the separate duties to defend and indemnify in the context of liability insurance policies. The court explains that the duty to defend is determined by the "eight corners doctrine" [the allegations of the complaint plus the policy language], but that the duty to indemnify is different:

> The insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy. Evidence is usually necessary in the coverage litigation to establish or refute an insurer's duty to indemnify. This is especially true when the underlying liability dispute is resolved before a trial on the merits and there was no opportunity to develop the evidence, as in this case. We hold that even if Markel has no duty to defend D.R. Horton, it may still have a duty to indemnify D.R. Horton as an additional insured under Ramirez's CGL insurance policy. That determination hinges on the facts established and the terms and conditions of the CGL policy.

This case, of course, does <u>not</u> involve indemnity under a CGL policy or any other type of insurance.

<u>Texas Courts of Appeal Decisions</u>

Based on what I have read in the Texas Supreme Court opinions, in the parties' voluminous submissions and in my own research, there is a large body of decisions from the fourteen Texas courts of appeal which touch on indemnity agreements or provisions. None of the

-10-

parties have cited a case which is directly on point and I have not found one, either. Nevertheless, the following cases may have some relevance to the present dispute in the absence of a controlling Texas Supreme Court case.

<u>Safeco Insurance Company of America v. Gaubert</u>, 829 S.W.2d 274, 281 (Tex. App. 1992) states the following general rule:

> A contract for indemnity is read as any other contract. Under principles of contract law, courts must ascertain and give effect to the intentions of the parties as expressed in the instrument. When the contract is unambiguous, we must determine the rights and liabilities of the parties by giving legal effect to the contract as written.
>
> The indemnity agreement governs the parties' rights and obligations, and indemnity agreements are strictly construed in favor of the indemnitors, in this case, appellees. The doctrine of *strictissimi juris* is a rule of substantive law applicable after the parties' intent has been ascertained. In determining the parties' intent in the indemnity agreement, words and phrases are given their ordinary, popular, and commonly accepted meaning. Further, we may not expand the parties' rights or responsibilities beyond the limits agreed upon by them in the contract.

(Internal citations omitted).

<u>Texas Dept. of Transportation v. Metropolitan Transit Authority of Harris County</u>, 2002 WL 724927 (Tex. App.-Hous. (1 Dist.)) (not designated for publication) ruled that the express negligence doctrine is <u>not</u> applicable when the indemnitee is not seeking indemnification for its own negligence, which is what KBR says is the situation here (Doc. 99 at 6). But, under Texas Court of Appeals rules, unpublished opinions have no precedential value. Tex. R. App. P. 47.7.

In <u>English v. BGP International, Inc.</u>, 174 S.W.3d 366, 370-71 (Tex. App. 2005) a Texas court of appeals observed:

> Generally, when parties include an indemnity provision in a contract, the duty to indemnify includes the duty to pay for all costs and expenses associated with defending

-11-

> suits against the indemnitee. See, e.g., Fisk Elec. Co. v. Constructor's & Assoc., Inc., 888 S.W.2d 813, 815 (Tex.1994) ("[An] obligation to pay attorney's fees arises out of [a] duty to indemnify."); Keystone Equity Mgmt. v. Thoen, 730 S.W.2d 339, 340 (Tex. App.–Dallas 1987, no writ) ("The ordinary and commonly accepted meaning of the phrase 'indemnify, defend, and save harmless' ... encompasses attorney's fees.... We hold that [the] *contractual promise to 'defend ... all suits in connection with the premises' includes the obligation to pay for the defense of such suits.*") (emphasis added). However, "absent a duty to indemnify, there is no obligation to pay attorney's fees." Fisk Elec. Co., 888 S.W.2d at 815.

The problem is that the opinion, while citing some of the language from Fisk, does not deal directly with Fisk's holding that:

> We hold that no obligation to indemnify an indemnitee for the costs or expenses resulting from a claim made against it for its own negligence arises unless the indemnification agreement complies with the express negligence test. Therefore, we reverse the judgment of the court of appeals and render judgment for Fisk.

### The Parties' Positions

It is helpful to review the parties' positions with respect to the indemnity issue. Early on, KBR took the position that Eby's obligations under the provisions are not subject to the express negligence test finally adopted in Ethyl. KBR's argument was that: Ethyl and Fisk limit the express negligence test to situations where an indemnitee is seeking to be indemnified for its own negligence or strict liability. The difference in this case, according to KBR, is that it is seeking to indemnified for Eby's acts, not its own. (Doc. 70 at 8-9).

Eby's response did not directly state whether or not it takes the position that the indemnity provision meets the express negligence test. Eby's arguments were somewhat convoluted and are hard to summarize. Eby's conclusion was that the provision ". . . might serve

to indemnify KBR for Eby's negligent actions; however, by its own terms, it is not so broad as to indemnify KBR for its own acts . . . which were the basis of [Celanese's] claims." (Doc. 94 at 23).

KBR replied by restating that it is not seeking indemnity for its own negligence or strict liability. However, it changed its position and argued that the indemnity provision <u>does</u> meet the express negligence test. But it advanced this argument without squaring it with <u>Ethyl's</u> clear requirement that "[P]arties seeking to indemnify the indemnitee [here, KBR] from the consequences of its [KBR's] own negligence must express that intent in specific terms." Instead, KBR merely argued that Eby had "fair notice" under the unambiguous language of the indemnity provision that it was agreeing to all liabilities for all damages . . . ." (Doc. 99 at 7 and 17-19).

<u>Discussion</u>

It simplifies the discussion to remove the surplus wording from the indemnity provision. When that is done, the provision reads:

> Eby agrees to indemnify and hold harmless KBR from and against any damages, claims, demands, suits, and judgment costs including attorney's fees and expenses for or on account of damage to property directly or indirectly arising from or caused in connection with the work by Eby.

A couple of things are immediately apparent: (1) the provision does not contain the word "negligence" and (2) it does not mention "work" done by KBR. When the provision is compared to the indemnity provision in <u>Atlantic Richfield</u>, <u>supra</u>, (which specifically refers to any negligent act or omission of ARCO, the indemnitee), it is clear that the provision in this case does not meet the express negligence test because it does not clearly state that its intent is to indemnify KBR from KBR's own negligence. Therefore, under the clear holding in

Fisk, Eby is not obligated to indemnify KBR.

KBR attempts to distinguish Fisk by pointing out there was no determination of the indemnitee's negligence in Fisk, while it has been determined that Eby's actions and not KBR's caused the damage to the methanol line. (Doc. 269 at 3). But Fisk rejected this outcome-based approach under an indemnity contract. Just as in Fisk, the indemnitee (KBR) was sued on claims that its own wrongful conduct (both intentional and strict liability) caused damage and rendered it liable. And just as in Fisk, if KBR had lost on those claims Eby would not have been obligated to indemnify KBR because their agreement fails to satisfy the express negligence test. Fisk said the indemnitee cannot not recover its defense costs in such circumstances.[4] "Without an express reference in the indemnification provision to claims based upon negligence, there is no indemnity for defense costs incurred in connection with a negligence claim irrespective of whether the claim is ultimately proved." Fisk, 888 S.W.2d at 815-16.[5] The determination that KBR did not cause the damage does not create a duty to indemnify.

## Conclusion

Judge Brown's order of February 11, 2011 (Doc. 119) is set aside

---

[4] See Fisk, 888 S.W.2d at 815 ("By Constructors' own admission, if the plaintiff in the underlying suit were successful, Fisk would not be obligated to pay anything to Constructors because the agreement fails to satisfy the express negligence test. Yet, Constructors would have this court impose on Fisk a duty to bear the costs of defense. Such a holding would be contrary to the reasoning of Ethyl.")

[5] Any reliance by KBR on Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118 (Tex. App. 2002) is misplaced. Aside from the fact that a court of appeals decision could not alter the clear holding of Fisk, Tesoro is distinguishable because the indemnity agreement in that case met the express negligence test, while the agreement between Eby and KBR does not.

to the extent he ruled that Eby is obligated to indemnify KBR.

No motion to reconsider may be filed. The indemnity issue has been fully briefed. It is now time to move this case to an ultimate resolution.

The Pretrial Order noted a ruling on Eby's duty to indemnify could render moot many of the remaining claims. (Doc. 262 at 6). The parties are directed to file a joint statement identifying any claims that are not moot in view of the court's ruling above. The statement shall be filed by October 9, 2012, and shall not exceed three pages.

IT IS SO ORDERED.

Dated this  17th  day of September 2012, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE