# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

MARTIN K. EBY CONSTRUCTION )
COMPANY, INC., )
 )
 )                   CIVIL ACTION
Plaintiff, )
 )               No. 08-1250-MLB
v. )
 )
ONE BEACON INSURANCE COMPANY, )
et al., )
 )
 )
Defendant. )
 )
_____ )
 )
CONTINENTAL CASUALTY COMPANY, )
et al., )
 )
Plaintiff, )
 )                   CIVIL ACTION
v. )
 )               No. 08-2392-MLB
ONEBEACON INSURANCE COMPANY, )
successor in interest to )
COMMERCIAL UNION INSURANCE )
COMPANY, et al., )
 )
Defendants. )
_____ )

## MEMORANDUM AND ORDER

Before the court are the following:

1. Travelers' Motion for Summary Judgment against KBR
(Docs. 241, 243);
2. KBR's Response (Doc. 255);
3. Travelers' Reply (Doc. 266);
4. KBR's Supplemental Response (Doc. 276); and
5. Travelers' Supplemental Reply (Doc. 277).

1

The parties are thoroughly familiar with the history of this litigation and it will be repeated here only as necessary. In light of the court's prior rulings and the parties' joint statement of remaining issues (Doc. 272), the court finds that KBR's counterclaim against Travelers[1] is the only remaining ripe claim.

KBR's counterclaim alleges that Travelers is obligated to provide insurance coverage for KBR's defense costs from the underlying Texas litigation. (Doc. 28). KBR's counterclaim is now based on a single insurance policy and a single area of coverage: a 2002 policy Travelers issued to Eby that included coverage for Eby's "contractual indemnitees."[2] Travelers moves for summary judgment on KBR's counterclaim, arguing KBR has waived it or, alternatively, that the policy requirements for indemnitee coverage are not met. KBR denies that it waived its counterclaim and argues all of the conditions for indemnitee coverage are satisfied. (See Doc. 272 at 2-3). The court finds that the policy conditions for coverage of KBR's defense costs have not been met and that KBR's

---

[1] "Travelers" is used in the pleadings and briefs to refer collectively to Travelers Casualty and Surety Company, f/k/a The Aetna Casualty and Surety Company (TC&S), United States Fidelity and Guaranty Company (USF&G), St. Paul Fire and Marine Insurance Company (St. Paul) and Athena Assurance Company (Athena).

[2] KBR initially asserted coverage under several policies issued by Travelers to Eby between 1985 and 2002, but has narrowed its claim to a single policy, No. KK08000952, covering the period 1/1/2002 to 1/1/2003. (Doc. 243 at 2). Moreover, KBR has now waived any claim that it was an additional insured or a "protected person" under the 2002 policy. (Doc. 255 at 3).

counterclaim fails as a matter of law. Travelers' motion for summary judgment will therefore be granted.

## I. Facts

The underlying Texas suit involved property near the Bayport Industrial Complex in Harris County, Texas. The area was occupied by industrial plants and underground pipelines.

CWA Project. In 1971, Celanese Corporation installed a methanol pipeline at the site. In 1979, KBR[3] contracted with the City of Houston to design a 30-inch water pipeline at the site. The design work was done under specifications of the Coastal Industrial Water Authority ("CWA"), a state agency. KBR's contract required it to provide the CWA with engineering services, help CWA prepare a bid package for contractors, and inspect the work of the successful contractor.

The CWA accepted Eby's[4] bid for the project. A contract for construction of the water pipeline was entered between Eby (as "Contractor") and the CWA and the City of Houston. It identified KBR as the project "Engineer." KBR was not a party or signatory to this contract, although its powers and duties were set forth in the contract specifications.

---

[3] The contract was made by Brown & Root, Inc., a predecessor of Kellogg, Brown & Root (KBR). It will be referred to here as KBR.
[4] The bid was made by Chisolm Trail Construction Co., Inc., a predecessor of Martin K. Eby Construction Co., Inc. It will be referred to as Eby.

The CWA contract specifications included an indemnity provision which stated:

> "The contractor [Eby] agrees that he has sole responsibility for the protection of facilities, structures, and properties inside and outside the limits of construction and agrees to indemnify and hold harmless the Owner, the Engineer [KBR], and owners of adjoining properties from and against any and all damages, claims, demands, suits, and judgment costs including attorney's fees and expenses for or on account of damage to property of any person, firm, corporation, company, or government agency, or death of or injury to any person or persons (including property and employees of the Coastal Industrial Water Authority, Brown & Root, Inc., the Contractor, and employees of the Contractor), directly or indirectly arising from or caused by or in connection with the performance or failure to perform any work provided for hereunder by the Contractor, his subcontractors, or their or the Contractor's agents, servants, or employees. It is agreed and understood that in the prosecution of work under the provisions hereof, the Contractor is and shall continue to be an independent contractor.

(Doc. 72 at 22).

This court has determined that the above provision did not meet the "express negligence test" of Texas law. (Doc. 270 at 13-14). As such, it did not contractually obligate Eby to indemnify KBR for its defense costs from the underlying Texas litigation. KBR now looks to Travelers.

<u>Relevant Policy Provisions</u>. Travelers issued a liability insurance policy (No. KK08000952) to Eby that was in effect from January 1, 2002, to January 1, 2003. (Doc. 243, Ex. 4). This is the policy under which KBR contends it is owed its defense costs. Eby is the named insured on the policy. KBR now concedes it does <u>not</u>

4

qualify as an additional insured or "protected person" under this policy, but argues it is entitled to coverage for defense costs under the policy's "contract liability" indemnitee provisions. <u>See</u> Doc. 255 at 2-3.

The relevant 2002 Travelers policy provided in part:

**Bodily injury and property damage liability.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage, or premises damage that:
- happens while this agreement is in effect; and
- is caused by an event.
***
*Property damage* means:
- physical damage to tangible property of others, including all resulting loss of use of that property; or
- loss of use of tangible property of others that isn't physically damaged.
***
*Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
***
**Contract liability.** We won't cover injury or damage for which the protected person has assumed liability under any contract or agreement.

But we won't apply this exclusion to injury or damage for which the protected person would have liability without the contract or agreement.

Nor will we apply this exclusion to … property damage … for which the protected person has assumed liability under a covered contract made before the … property damage … happens.

Also, if the protected person has agreed under the same covered contract to defend or pay for the defense of, an indemnitee against a claim or suit for such … property damage …, we'll have the duty to defend the indemnitee against the claim or suit only if:

5

- the indemnitee isn't a protected person for the …
  property damage …;
- the claim or suit is for … property damage … for
  which that protected person assumed the liability
  of the indemnitee under the covered contract;
- the … property damage… is covered by this
  agreement;
- all of our indemnitee defense control and authority
  requirements are fulfilled; and
- all of our indemnitee defense cooperation and
  notice requirements are fulfilled.
        ***
If we have the duty to defend the indemnitee under the
contract liability indemnitee defense coverage, we'll do
the following:

- We'll defend the indemnitee against the claim or suit
  even if all of the allegations of such claim or suit
  are groundless, false, or fraudulent. …

However, if we don't have a duty to defend the indemnitee
under [] the contract liability indemnitee defense
coverage; … we'll pay covered indemnitee defense expenses
assumed under contract as if they're damages covered by
this agreement.

        ***

*Covered contract* means that part of any of the following
contracts or agreements under which you assume the
liability of another to pay damages for covered …
property damage that is sustained by others:
[listing various agreements not applicable here, such as
easements or leases]

Covered contract also means …:
- that part of any other contract or agreement under
  which you assume the liability of another to pay
  damages for … property damage … that's sustained by
  others.
***

But we won't consider the following parts of any other
contract or agreement under which you assume the
liability of another to pay damages to be a covered
contract:
- Architect, engineer, or surveyor indemnity.

\*\*\*

*Architect, engineer, or surveyor indemnity* means that part which indemnifies any architect, engineer, or surveyor for injury or damage that results from:
\*\*\*
- the giving of or failure to give any direction or instruction if that giving or instruction is the primary cause of the injury or damage.

*Indemnitee* means any person or organization who a protected person has agreed under a covered contract to indemnify or hold harmless.

*Indemnitee defense control and authority requirements* means the following requirements which must be fulfilled for us to conduct and control the defense of an indemnitee against a claim or suit under this agreement:
- The protected person and the indemnitee must ask us to conduct and control the defense of the indemnitee against the claim or suit under this agreement.
- We must determine that there's no conflict between the interests of the protected person and those of the indemnitee, based on the allegations in the claim or suit and on what we know about the factual and legal basis for the damages being sought.
- [listing additional requirements]

Indemnitee defense expenses assumed under contract means the reasonable attorney fees and necessary litigation expenses which:
- are incurred by or for an indemnitee to defend itself against a claim or suit for damages covered by this agreement; and
- are subject to a covered contract under which a protected person has agreed to defend, or pay for the defense of, the indemnitee against the claim or suit.

(Doc. 243, Ex. 4. See policy excerpts at Doc. 255, Ex. 1).

On January 30, 2009, KBR formally provided notice of the underlying suit to Travelers and Continental. KBR asserted that Travelers owed KBR coverage as an "additional insured," including

payment of its defense costs, under policies including KK08000952. (Doc. 243-13). KBR had incurred over $1.5 million in defense costs by that time. It seems significant, in view of KBR's present stance, that KBR's demand made no mention of the Travelers' contractual liability indemnitee coverage provision.

Travelers acknowledged receipt of KBR's demand on February 4, 2009. (Doc. 255-29). The letter said that Travelers was fully reserving its rights and that when a review was completed Travelers would correspond further. On February 9, 2009, Travelers moved to add KBR as a defendant in the pending declaratory judgment action (No. 08-2392, Doc. 56) and asserted a counterclaim seeking a ruling that it owed KBR no coverage. Travelers provided no defense to KBR and did not pay its defense costs.

KBR incurred a total of $1,827,821 in defense costs and expenses in the underlying action.

## II. Summary Judgment Standard

The rules pertaining to summary judgment are well-established. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the

proper disposition of the claim. <u>Adamson v. Multi Community</u> <u>Diversified Svcs., Inc</u>., 514 F.3d 1136, 1145 (10th Cir.2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v.</u> <u>Liberty Lobby, Inc</u>., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If so, the court cannot grant summary judgment. <u>Celotex</u> <u>Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Construction of Insurance Contracts

The parties agree that Kansas law governs KBR's claim for coverage under the 2002 Travelers policy. (Doc. 262, Sec. 3(d)). Under Kansas law, the following rules of construction are applied to insurance contracts:

"The language of an insurance policy, like any other contract, must, if possible, be construed in such way as to give effect to the intention of the parties. In construing a policy of insurance, a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished.

"Because the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured. If an insurance policy's language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense. In such case, there is no need for judicial interpretation or the application of rules of liberal construction.

The court shall not make another contract for the parties and must enforce the contract as made.

"However, where the terms of an insurance policy are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail.

"'To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning.'

"Whether a written instrument is ambiguous is a question of law to be decided by the courts. Courts should not strain to create an ambiguity where, in common sense, there is not one. The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean."

American Fam. Mut. Ins. Co. v. Wilkins, 285 Kan. 1054, 179 P.3d 1104, 1109-10 (2008) [citations omitted].

## IV. Analysis

The 2002 Travelers policy provided two potential grounds for coverage of KBR's defense costs: (1) coverage for KBR as a "protected person"; or (2) coverage under the policy's "contract liability" provisions because KBR was a contractual indemnitee of Eby. KBR now concedes the first ground does not apply, so the only issue is whether the policy's contract liability section can be read to require payment of KBR's defense expenses. As a preliminary matter, the court rejects Travelers' argument that KBR waived any right to assert this claim by failing to include it in the pleadings or the pretrial order.

10

KBR's initial pleading asked for a declaration that Travelers breached a duty under the policy to defend KBR from the claims in the underlying suit. (Doc. 28 at Pp. 18-20). Conversely, Travelers sought a declaration that it had no duty under the policy to defend KBR or to pay its defense expenses. (Doc. 90 at p. 38). These claims fairly encompass the allegations now made by KBR. Moreover, the pretrial order -- which supersedes the pleadings and controls the course of the litigation -- now includes KBR's contentions that Travelers was obligated to defend it as Eby's indemnitee under a covered contract. Doc. 262 at 11-12. And despite Travelers' protest, it makes no showing of unfair surprise from having to address the scope of its obligations under the policy. See Fisherman Surgical Instruments, LLC v. Tri-anim Health Servs., Inc., 502 F.Supp.2d 1170, 1176, n.2 (D. Kan. 2007) (pretrial order is liberally construed to cover legal and factual theories embraced by its language). Travelers' waiver argument is therefore denied.

**Contractual liability – Indemnitees**.

The contract liability section of the policy first generally excludes coverage for "any injury or damage for which the protected person [Eby] has assumed liability under any contract or agreement." This precludes coverage for KBR as a contractual indemnitee of Eby unless some subsequent language in the policy negates the exclusion.

The section next states that the contract liability exclusion will not be applied "to injury or damage for which the protected person [Eby] would have liability without the contract or agreement." Other than the CWA indemnity contract, no basis is suggested by KBR (or the record) on which Eby would be liable for KBR's defense costs from the underlying suit. This section therefore does not require coverage for the KBR defense costs.

The next policy provision (beginning "Nor will we apply this exclusion") states the exclusion will not apply "to property damage … for which [Eby] has assumed liability under a covered contract made before … the property damage … happens." Leaving aside for the moment whether the CWA indemnity provision is a "covered contract," KBR's <u>defense</u> <u>expenses</u> clearly do not fall within the policy definition of "property damage." In other words, KBR's defense expenses do not constitute physical damage to tangible property or the loss of use of tangible property. As such, they are not "property damage" for which Eby assumed liability and do not fall within the scope of this exception.

The policy next deals specifically with contractual agreements by Eby to defend or to pay the defense expenses of an indemnitee: "Also, <u>if</u> [Eby] <u>has agreed under the same covered contract to defend or pay for the defense of an indemnitee</u> against a claim or suit for such … property damage…, we'll have the duty to defend the indemnitee against the claim or suit only if" certain conditions

are met. For the reasons explained below, the court concludes this provision did not give rise to any duty on Travelers' part to defend KBR.[5]

First, any duty on Travelers' part to defend KBR could not have arisen unless <u>Eby</u> first obligated itself under an indemnity agreement "to defend or pay for the defense of" KBR. No suggestion is made that Eby promised "to defend" KBR. And for the reasons explained in the court's memorandum and order of September 17, 2012 (Doc. 270), the CWA indemnity provision imposed no obligation on Eby to otherwise pay for KBR's defense costs. Under the Texas law governing construction of the CWA indemnity agreement, the CWA language failed to satisfy the "express negligence test." Pursuant to <u>Fisk Elec. Co. v. Constructors & Associates, Inc.</u>, 888 S.W.2d 813 (1994), that failure meant Eby had no contractual obligation to reimburse KBR for its defense costs from the Celanese litigation. See <u>Fisk</u>, 888 S.W.2d at 813-14 ("We hold that no obligation to indemnify an indemnitee for the costs or expenses resulting from a claim made against it for its own negligence arises unless the indemnification agreement complies with the express negligence

---

[5] And for these same reasons, the court finds Travelers had no duty to reimburse KBR's defense costs under the provision stating that even if Travelers has no duty to defend the indemnitee, it will "pay covered indemnitee defense expenses assumed under contract…." The "assumed under contract" definition, like the duty-to-defend provision, required a showing that Eby "agreed to defend, or pay for the defense of, the indemnitee against the claim or suit." As explained below, Eby made no such agreement.

13

test."). <u>See also</u> <u>Houston Lighting & Power Co. v. Atchison, Topeka & Santa Fe Ry. Co.</u>, 890 S.W.2d 455, 456 (Tex. 1994) (if indemnity agreement makes no mention of strict liability, it does not extend to claims for indemnity based on strict liability).

KBR points out that an insurer has a duty to defend if there is "any potential" for liability under the policy. <u>See</u> <u>Spruill Motors, Inc. v. Universal Underwriters Ins. Co.</u>, 212 Kan. 681, 686, 512 P.2d 403 (1973); <u>Spivey v. Safeco Ins. Co.</u>, 254 Kan. 237, 865 P.2d 182 (1993) ("[A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. If those facts give rise to a 'potential of liability,' even if remote, under the policy, the insurer bears a duty to defend."). Moreover, the duty to defend is generally determined from the pleadings and facts known to the insurer when the suit is filed, not from facts later determined in the litigation. <u>American Motorists Ins. v. General Host Corp</u>., 946 F.2d 1482, 1486 (10th Cir. 1991); <u>New Coleman Holdings, Inc. v. Aetna Cas. & Sur. Co.</u>, 1995 WL 708684 (D. Kan., Nov. 3, 1995). From these points, KBR argues that: 1) Travelers cannot rely on this court's ultimate finding that Eby had no contractual duty to indemnify KBR "to prove retroactively" that it had no duty to defend KBR; and 2) that the pleadings and information available to Travelers when it received notice of the suit against KBR "did not foreclose the

14

possibility that KBR was Eby's 'indemnitee' under a 'covered contract.'" KBR says the latter point is driven home by a prior ruling from this court finding that Eby had a duty to indemnify KBR. (Doc. 276 at 2-3).

Even if Travelers' duty to defend KBR is determined only from the allegations made in the Celanese litigation and from the facts known to Travelers when it learned of KBR's demand for a defense, those allegations and facts precluded any potential of a contractual obligation on Eby's part to indemnify KBR. The Celanese complaint alleged that KBR's failure to properly plan, monitor and oversee the installation of the CWA pipeline, its fraud in failing to report known damage, and its strict liability under federal and state law for the release of hazardous substances all rendered KBR liable for the resulting damage. But the CWA indemnity provision said nothing about Eby agreeing to indemnify or defend KBR from suits or claims alleging that KBR committed negligence, fraud or strict liability. By virtue of <u>Fisk</u> and other Texas case law requiring explicit language to shift legal responsibility for such claims to another party, Eby simply had no contractual obligation to indemnify KBR for its defense costs in the Celanese suit. And absent such a contractual obligation Travelers could have no duty to defend KBR.

Under the allegations of the Celanese suit, the language of the CWA indemnity provision, and the Texas law governing indemnity

15

contracts, there was no potential -- remote or otherwise -- for coverage of KBR's defense expenses when KBR made a demand upon Travelers. <u>Fisk</u> itself counsels that the determination of whether Eby had any indemnity obligation "should be established as a matter of law from the pleadings" -- not from the outcome of the Celanese suit or the outcome of this suit -- and "[e]ither the indemnity agreement is clear and enforceable or it is not." Here the CWA indemnity agreement was not enforceable: it had no express language of any kind obligating Eby to indemnify KBR for claims such as those made in Celanese suit. That fact was as true before this court's final ruling on the indemnity question as it was after, and it operated to preclude any potential claim by KBR for coverage under the Travelers' contractual indemnitee provision.

The facts known to Travelers at the time of KBR's demand thus precluded any duty to defend KBR. Even so, the court notes that Kansas law might in fact consider this court's ultimate determination of the indemnity question as precluding any claim of a duty to defend KBR. Kansas courts have applied "the ultimate showing test" in some circumstances in deciding whether an insurer had a duty to defend. Under that test, "an insurer's duty to defend is dependent on a showing that the defendant to the action is insured under the policy." <u>South Kansas Health Ins. v. Harden & Co.</u>, 278 Kan. 347, 353, 97 P.3d 1031, 1035 (2004). Kansas courts have applied this test when there is some question whether the

16

party claiming the benefit of a duty to defend actually qualifies as an insured under the policy.

In Williams v. Community Drive-In Theatre, Inc., 3 Kan.App.2d 352, 595 P.2d 724 (1979), the court explained why the ultimate outcome of the litigation was controlling when deciding whether the party sued was entitled to a defense under the policy: "[B]efore the general principle regarding the duty to defend applies, it must be shown that under the policy the defendant is in fact an insured, named or omnibus. This must be so because the insurer's obligation is not to provide a defense for a stranger merely because the plaintiff alleges that the defendant is an insured or alleges facts which, if true, would make him an insured. While an insurer may not decline the defense of an insured against an ultimately groundless claim, neither may it be compelled to defend an action against a party not entitled thereto under the policy provisions." Williams, 3 Kan.App.2d at 354. At least in these limited circumstances, "if the insurer's position is ultimately shown to be correct, then it should not be penalized by being forced to bear an expense which it did not contractually obligate itself to incur." In Williams the court concluded the insurer had no duty to defend because the jury in the underlying litigation ultimately found the defendant was acting outside the scope of her employment. That fact precluded her from being considered an insured under the policy. Williams, 3 Kan.App.2d at 353 ("the insurance company vigorously argues that

the jury verdict 'laid to rest' any claim that it owed [defendant] a defense. We agree."). <u>See</u> <u>also</u> <u>South Kansas Health Ins.</u>, 278 Kan. at 353 (<u>citing</u> <u>Williams</u> with approval); <u>Murphy v. Silver Creek Oil & Gas, Inc.</u>, 17 Kan.App.2d 213, 837 P.2d 1319 (1992) ("Where the contested issue is whether a person is in fact insured, we have adopted an ultimate showing or retrospective test. Before the duty to defend applies, it must be shown that the person was in fact an insured under the policy.").[6]

Travelers does not expressly cite the ultimate outcome test or the above cases, although it does invoke the underlying rationale. It bemoans the "absurd" result of KBR, "a complete stranger to the policies, who paid no premiums, [being] entitled to a full defense from Travelers" when this court has determined that KBR was not entitled to indemnity from Eby. (Doc. 277 at 4). Although the court finds no Kansas authorities applying the ultimate outcome test in these circumstances, the rationale of <u>Williams</u> seems to apply here with full force. KBR was not an insured of Travelers and paid no

---

[6] <u>Cf</u>. <u>Insurance Claims & Disputes 5th</u>, Allan D. Windt, §4:1 (Westlaw 2012): "A duty to defend should not exist until it is shown that the person claiming coverage was, in fact, an insured under the policy. If an indemnity claim is made against an insured, the insurer is not, therefore, obligated to pay for the alleged indemnitee's defense costs, since the alleged indemnitee is not an insured. The insurer would not be obligated to pay for the indemnitee's defense costs until it is determined that the insured owes indemnity. Until then, the insured is not obligated to pay for the indemnitee's defense costs."
    The court recognizes the above commentary does not strictly apply here, since the Travelers' policy had a provision promising to defend the insured's indemnitee under certain conditions.

premiums to obtain the benefits of this policy. It was entitled to a defense only upon a showing that it had entered into an indemnity agreement under which Eby promised to pay its defense costs. The finding of this court that there was no such indemnity agreement means KBR was essentially a stranger to the policy who should not be entitled to claim its benefits.

Even if, contrary to the holding above, the court could find there was a "remote potential" for coverage of KBR's defense costs at the time KBR made its demand on Travelers, the court would be forced to predict that the Kansas Supreme Court would apply "the ultimate showing test" in deciding whether Travelers had any duty to defend KBR. See Royal Maccabees Life Ins. Co. v. Choren, 393 F.3d 1175, 1180 (10th Cir. 2005) (in absence of controlling precedent, court sitting in diversity must predict how forum state's highest court would resolve issue of state substantive law). The question of whether KBR was an indemnitee entitled to a defense under the policy is comparable to the Kansas cases deciding whether an unnamed person qualifies for a defense as an additional insured. Applying the "ultimate showing test" here would lead to the conclusion that Travelers had no duty to defend KBR.

The parties raise a number of other issues, including whether various exclusions and conditions in the policy would otherwise preclude or limit KBR's claim for defense costs. In view of the conclusion above that Travelers had no duty to defend KBR or to pay

its defense costs, the court declines to address these additional issues. Additionally, in view of the parties' previously filed Joint Statement (Doc. 272), this ruling disposes of all remaining claims in the case and warrants entry of final judgment.

## V. Conclusion

Travelers' Motion for Summary Judgment against KBR (Doc. 241) is GRANTED. KBR shall take nothing on its counterclaim against Travelers; KBR's counterclaim is hereby dismissed with prejudice. Travelers' cross-claim seeking declaratory judgment against KBR is hereby granted. The court finds that Travelers had no duty to defend KBR and owes no coverage to KBR arising out of the claims in the underlying Celanese suit.

KBR's Motion for Summary Judgment against Eby (Doc. 133) is DENIED as moot. (See Doc. 272 at 2). KBR shall take nothing on its claims against Eby; such claims are hereby dismissed with prejudice.

Travelers' Motion for Summary Judgment against Eby (Doc. 239) is DENIED as moot. Travelers' claims against Eby are dismissed without prejudice. (See Doc. 272 at 3-4).

Eby's Motion for Summary Judgment against OneBeacon Insurance Company (Doc. 236) and Eby's Motion for Summary Judgment against Travelers (Doc. 238) are DENIED as moot. As a result the following claims are dismissed without prejudice: Eby's claim that OneBeacon and/or Travelers was obligated to defend KBR; OneBeacon's claim for

declaratory judgment against Eby; and OneBeacon's alternative claim against Travelers for contribution. (See Doc. 272 at 4).

The clerk will enter judgment accordingly.

No motions for reconsideration, however styled, may be filed.

IT IS SO ORDERED.

Dated this 22nd day of February, 2013, at Wichita, Kansas.


                                                  s/Monti Belot
                                                  Monti L. Belot
                                                  UNITED STATES DISTRICT JUDGE